TROY LAW, PLLC
41-25 Kissena Boulevard Suite 103
Flushing, NY 11355
Tel: (718) 762-1324
*Attorneys for the Plaintiff*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------x

NIQUAN WALLACE,

Plaintiff

v.

CRAB HOUSE INC.
d/b/a Crab House;
SAN-KIT CHENG
a/k/a San Kit Cheng
a/k/a Sankit Cheng
a/k/a Sam Cheng;
MENGXING WANG
a/k/a Meng Xing Wang
a/k/a May Wang
a/k/a May Cheng;
SONGQIANG WANG
a/k/a Song Qiang Wang
a/k/a John Wang
HAIFAN WANG
a/k/a Hai Fan Wang
a/k/a Fred Wang

Defendants.

---------------------------------------------------------------x

**Case No: 21-cv-05757**

**COMPLAINT**

**DEMAND FOR TRIAL BY JURY**

Plaintiff NIQUAN WALLACE (hereinafter "Mr. Wallace") on behalf of himself and others similarly situated, by and through his attorneys, Troy Law, PLLC, hereby brings this complaint against Defendants CRAB HOUSE INC. d/b/a Crab House; SAN-KIT CHENG a/k/a San Kit Cheng a/k/a Sankit Cheng a/k/a Sam Cheng; MENGXING WANG a/k/a Meng Xing Wang, a/k/a May Wang, a/k/a May Cheng; SONGQIANG WANG a/k/a Song Qiang Wang a/k/a John Wang; and HAIFAN WANG a/k/a Hai Fan Wang a/k/a Fred Wang, and alleges as follows:

## INTRODUCTION

1. This action is brought by Plaintiff, on behalf of himself and other employees similarly situated, against all Defendants, for hostile work environment and adverse actions, including but not limited to Plaintiff's termination on the basis of race in violation of the Civil Rights Act of 1866, 42 U.S.C. § 1981, New York State Human Rights Law, NY Exec. L. § 290 *et seq.* ("NYSHRL"), and New York City Human Rights Law, NYC Admin. § 8-101 *et seq.* ("NYCHRL").

2. Plaintiff is entitled to recover: (1) up to $300,000.00 as compensatory damages for front pay and for nonpecuniary losses including emotional pain stemming from racially-discriminatory termination, pursuant to Section 1981a(b)(3)(D) of the United States Code; (2) back pay and reinstatement as equitable relief, and compensatory damages for front pay and nonpecuniary losses including emotional pain stemming from racially-discriminatory termination, and prejudgment and postjudgment interest, pursuant to Section 297 of the NYSHRL; and (3) back pay and reinstatement as equitable relief, and compensatory damages for front pay and nonpecuniary losses including emotional pain stemming from racially-discriminatory termination, and prejudgment and postjudgment interest, and reasonable attorney fees and costs pursuant to Section 8-502 of the NYCHRL.

## JURISDICTION AND VENUE

3. This Court has original federal question jurisdiction over this controversy pursuant to 42 U.S.C. § 1981, the Civil Rights Act of 1866, and has supplemental jurisdiction over Plaintiffs' state-law claims pursuant to 28 U.S.C. § 1367(a).

4. This Court has personal jurisdiction over the Defendants because they are citizens and residents of the State of New York who are domiciled in and conduct business in the State of

New York.

5. Venue is proper in the United States District Court for the Southern District of New York pursuant to 28 U.S.C. §§ 1391(b) and (c), because one of the Defendants conduct business in this District, and the acts and omissions giving rise to the claims herein alleged took place in this District.

**PLAINTIFF**

6. NIQUAN WALLACE was employed by Defendants from on or about June 2, 2019 through on or about December 21, 2019, to work for Non-Defendant Corporation RED PANDA ASIAN BISTRO d/b/a Lobster House Seafood Buffet Restaurant at 95-25 Queens Blvd, Queens, NY 11374 as a server.

7. NIQUAN WALLACE is an African-American male.

8. NIQUAN WALLACE held his job and performed his duties with skill, dedication, and dignity, as witnessed by the restaurant staff.

**DEFENDANTS**

***Non-Defendant Corporation***

9. Non-Defendant Corporation RED PANDA ASIAN BISTRO INC. d/b/a Lobster House Seafood Buffet Restaurant is a domestic business corporation organized under the laws of the State of New York.

10. RED PANDA ASIAN BISTRO INC. d/b/a Lobster House Seafood Buffet Restaurant has a principal address at 95-25 Queens Blvd, Queens, NY 11374.

***Corporate Defendant***

11. Defendant CRAB HOUSE, INC. d/b/a Crab House is a domestic business corporation organized under the laws of the State of New York.

12. CRAB HOUSE, INC. d/b/a Crab House has a principal address at 135 East 55th Street, New York, NY 10022.

***Owner/Operator Defendants***

13. SAN-KIT CHENG a/k/a San Kit Cheng a/k/a Sankit Cheng a/k/a Sam Cheng, known as "Boss" to Plaintiff is the New York Alcoholic Beverage Control Principal of Non-Defendant Corporation RED PANDA ASIAN BISTRO INC. d/b/a Lobster House Seafood Buffet Restaurant.

14. SAN-KIT CHENG a/k/a San Kit Cheng a/k/a Sankit Cheng a/k/a Sam Cheng exercised substantial administrative control over all of Defendants' restaurants.

15. At Lobster House Seafood Restaurant, SAN-KIT CHENG a/k/a San Kit Cheng a/k/a Sankit Cheng a/k/a Sam Cheng is the person in charge, along with his wife, MENGXING WANG a/k/a Meng Xing Wang a/k/a May Wang a/k/a May Cheng of scheduling and designating the work load; assigning duties like running the food for other waiters; assigning non-tipped duties like mopping for Plaintiff; surveilling the Plaintiff and brushing him up.

16. SAN-KIT CHENG a/k/a San Kit Cheng a/k/a Sankit Cheng a/k/a Sam Cheng approves many of with MENGXING WANG a/k/a Meng Xing Wang a/k/a May Wang a/k/a May Cheng proposals, like the institution of the "lottery system" for table assignment and ordering Plaintiff NIQUAN WALLACE to bus the other waiters' food as well.

17. MENGXING WANG a/k/a Meng Xing Wang a/k/a May Wang a/k/a May Cheng, known as "Lady Boss" is a day-to-day manager of Non-Defendant Corporation RED PANDA ASIAN BISTRO INC. d/b/a Lobster House Seafood Buffet Restaurant.

18. SONG QIANG WANG a/k/a John Wang, the brother of MENGXING WANG a/k/a Meng Xing Wang a/k/a May Cheng also surveilled Plaintiff, brushing up against him.

19. SONG QIANG WANG a/k/a John Wang lives in the same household as MENGXING WANG a/k/a May Wang a/k/a May Cheng and SAN-KIT CHENG a/k/a San Kit Cheng a/k/a Sankit Cheng a/k/a Sam Cheng.

20. HAIFAN WANG a/k/a Hai Fan Wang a/k/a Fred Wang has managerial authority over the waitstaff, including Plaintiff NIQUAN WALLACE.

21. As part of his responsibilities, HAIFAN WANG a/k/a Hai Fan Wang has the authority to assign Plaintiff to mopping duties and did assign Plaintiff to mopping duties.

## STATEMENT OF FACTS

### I. Corporate Defendant CRAB HOUSE, INC. d/b/a Crab House is a Successor to Non-Defendant Corporation RED PANDA ASIAN BISTRO d/b/a Lobster House Seafood Buffet Restaurant

22. CRAB HOUSE, INC. d/b/a Crab House had notice of the charge or pending lawsuit prior to acquiring the business or assets of the predecessor, Non-Defendant Corporation RED PANDA ASIAN BISTRO d/b/a Lobster House Seafood Buffet Restaurant given that the owners are aware that NIQUAN WALLACE was uncomfortable with the way in which he was being treated because of his race.

23. All Lobster House Seafood Buffet Restaurant employees transferred over to Crab House in or around April 2021 when Lobster House Seafood Buffet Restaurant closed.

24. While they were operating concurrently, Lobster House and Crab House shared a high degree of interrelated and unified operation, common ownership in the persons of SAN KIT CHENG a/k/a Sankit Cheng a/k/a Sam Cheng, SAN-YIU CHENG a/k/a San Yiu Cheng a/k/a Sanyiu Cheng and SAN-CHONG CHENG a/k/a San Chong Cheng a/k/a Sanchong Cheng, common management in the persons of SAN KIT CHENG a/k/a Sankit Cheng a/k/a Sam Cheng, SAN-YIU CHENG a/k/a San Yiu Cheng a/k/a Sanyiu Cheng and Sam Chong Cheng, centralized control of labor relations conducted by SAN KIT CHENG a/k/a Sankit Cheng a/k/a Sam Cheng, SAN-

YIU CHENG a/k/a San Yiu Cheng a/k/a Sanyiu Cheng and SAN-CHONG CHENG a/k/a San Chong Cheng a/k/a Sanchong Cheng, common control by SAN KIT CHENG a/k/a Sankit Cheng a/k/a Sam Cheng, SAN-YIU CHENG a/k/a San Yiu Cheng a/k/a Sanyiu Cheng and SAN CHONG CHENG a/k/a Sanchong Cheng, common business purpose and interrelated business goals.

25. Lobster House's website says it is closed due to the ongoing pandemic and directs customers to come to Crab House for indoor dining. Additionally, it lists Crab House's location as Lobster House's "new location."

26. Plaintiff pleas successor liability under 42 U.S.C. Section 1981 to CRAB HOUSE, INC. d/b/a Crab House on a successor liability theory because: (1) Crab House had notice of the charge and pending lawsuit prior to acquiring Lobster House Seafood Buffet Restaurant, (2) Lobster House Seafood Buffet Restaurant is no longer able to provide relief, (3) there is a substantial continuity in business operations in that despite the change of location, Carb House uses the same and substantially the same supervisory personnel, and the same job exists under the same conditions.

**II. Plaintiff's Discrimination Claims**

**A. Hostile Work Environment**

27. From the incipience of Plaintiff NIQUAN WALLACE's employment with Non-Defendant Corporation RED PANDA ASIAN BISTRO d/b/a Lobster House Seafood Buffet Restaurant, Plaintiff was frequently assigned to run other waiters' table, instead of being given his own tables to serve. This meant that while other waiters would earn tips from waiting their tables, Mr. Wallace would both (1) not earn tips from the other waiters' tables and (2) be deprived of time to spend waiting tables himself, depriving him of tips.

28. As a "runner," Plaintiff was required to run food from the kitchen to the tables, take up the glasses, remove the glasses from the table, and clean the table.

29. NIQUAN WALLACE was the only waiter who was required to run other waiters' food.

30. NIQUAN WALLACE was the only server assigned to take out the garbage.

31. NIQUAN WALLACE was also required to sweep and mop the floor of the restaurant every single day.

32. He was also required to play "bodyguard," to run off after customers who have failed to pay the full amount of money and bring them back to the restaurant to pay.

33. MENGXING WANG a/k/a Meng Xing Wang a/k/a May Wang a/k/a May Cheng would frequently accuse Mr. Wallace of stealing tip money. She singled him out as uniquely suspicious because he is a Black man.

34. As a result of MENGXING WANG a/k/a Meng Xing Wang a/k/a May Wang a/k/a May Cheng's unfounded and stereotype-rooted suspicion of Mr. Wallace, she and the other Defendants would hover over him and bump and jostle him in an effort to intimidate him when he was collecting money from customers.

35. Plaintiff NIQUAN WALLACE is not only the only individual who is accused of being not honest and not trustworthy enough to ring the cash register. All the other such individuals are Hispanic. Asian and white employees are not subject to the same accusations and unfounded suspicion, but Black and Hispanic employees are, because Black and Hispanic people are unfairly stereotyped as uniquely criminal and untrustworthy.

36. Another Hispanic individual, RUBEN, was hired to work as a server.

37. RUBEN was successful as a trainee but because he was Spanish, was deemed not trustworthy and not allowed to go into the cash register.

38. RUBEN instead was made to work as a busser making no tips doing heavy duty

work and was discouraged and quit after three months.

39. Beginning in July 2019, Mr. Wallace was accused of taking tips from the table and stealing money off of the money bills.

40. In or around October 2019, Defendants also created a raffle system for assigning sections of tables in the restaurant to servers.

41. Defendants regularly had Mr. Wallace select a section last so that he would always receive the worst section, typically the upstairs section of the restaurant. Defendants would then fill the first floor of the restaurant with customers before seating customers upstairs. As a result, Plaintiff Wallace would spend a significant portion of his shift with few to zero customers, further reducing his earning capacity.

42. After October 2019, Plaintiff NIQUAN WALLACE also had his hours reduced, from five (5) work days to four (4) workdays, with Fridays taken away.

43. Like Plaintiff NIQUAN WALLACE, ALFONSO GONZALEZ also could not go in the cash register only family.

44. ALFONSO GONZALEZ, who was Spanish, was hired as soon as Plaintiff filed the lawsuit as Plaintiff NIQUAN WALLACE's replacement.

45. However, instead of working as a server, ALFONSO GONZALEZ was required to do busboy duties.

46. ALFONSO GONZALEZ experienced a lot of hard work going upstairs by picking a paper raffle by MENGXING WANG a/k/a Meng Xing Wang a/k/a May Wang a/k/a May Cheng.

47. Because of the way the "raffle" is set up, just like Plaintiff NIQUAN WALLACE, coworker ALFONSO GONZALEZ also had to go upstairs or waited 2 -3 hours helping other family member servers until he could have customers sent upstairs.

48. Eventually, ALFONSO GONZALEZ, who worked part-time only, was terminated

as a result of his race.

49. KIMBERLY ANN GOMEZ a/k/a Kim Gomez, a White-American, worked with Mr. Wallace at Non-Defendant Corporation RED PANDA ASIAN BISTRO d/b/a Lobster House Seafood Buffet Restaurant.

50. KIMBERLY ANN GOMEZ, unlike Mr. Wallace, received preferential treatment because she was white.

51. KIMBERLY ANN GOMEZ was deemed "trustworthy" and allowed to go into to cash register too.

52. KIMBERLY ANN GOMEZ would get more days to work and also had her sick days requested readily approved and honored.

53. On the other hand, Plaintiff NIQUAN WALLACE was not given such privileges. Even if Plaintiff NIQUAN WALLACE came a little later, he would lose out on a full day's work and pay.

54. Similarly, even when NIQUAN WALLACE had a legitimate reason to request for a schedule shift, he would get his request denied.

55. However, the same or similar request made by KIMBERLY ANN GOMEZ would be readily approved.

56. KIMBERLY ANN GOMEZ was never ordered to sweep, mop, work the sauce bar, or required to lift a heavy chair at the restaurant.

57. KASEY KARISARIDIS a white-American, worked with Mr. Wallace at Non-Defendant Corporation RED PANDA ASIAN BISTRO d/b/a Lobster House Seafood Buffet Restaurant.

58. KASEY KARISARIDIS also never had to sweep or mop during her employment.

Instead, she only had to pick up glasses or plates.

**B. Termination**

59. On or about December 21, 2019, SAN-KIT CHENG a/k/a San Kit Cheng a/k/a Sankit Cheng a/k/a Sam Cheng, acting on behalf of Non-Defendant Corporation RED PANDA ASIAN BISTRO d/b/a Lobster House Seafood Buffet Restaurant, terminated Mr. Wallace, stating, "I am sorry. You are terminated as I was told that you are stealing other servers tips and stealing other employees payroll information from the computer. I saw the camera and confirmed that."

60. HAIFAN WANG a/k/a Haifan Wang a/k/a Fred Wang complained to SAN-KIT CHENG a/k/a San Kit Cheng a/k/a Sam Cheng for taking a picture of the register.

61. At the time, MENGXING WANG a/k/a Meng Xing Wang was taking care of the restaurant.

62. In the last month of Plaintiff's employment with Non-Defendant Corporation RED PANDA ASIAN BISTRO d/b/a Lobster House Seafood Buffet Restaurant, the wait staff's tip was no longer pooled. Instead, each individual waiter would receive his or her tips from the tables that they waited.

63. On that day, Mr. Wallace informed SAN-KIT CHENG a/k/a San Kit Cheng a/k/a Sam Cheng he had never taken tips from other employees and that he was taking photos of his personal pay stub information on the work computer, not the information of his co-workers.

64. Mr. Wallace returned on or about December 23, 2019 to receive his final paycheck.

**STATEMENT OF CLAIMS**

**COUNT I.**
**[Race Discrimination in Violation of the Civil Rights Act of 1866, 42 USC § 1981 Brought by Plaintiff Against All Defendants]**

65. Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.


66. The aforesaid discriminatory acts and omissions of Defendants and their agents interfered with Plaintiffs and their right to enforce contracts.

67. That the purpose of Defendants and their agents in so acting was to prevent Plaintiffs through economic and psychological intimidation, from seeking the equal protection of the laws, and from enjoying the equal privileges and immunities of citizens under the Constitution and laws of the United States and State of New York.

68. Pursuant to their conduct, Defendants and their agents acted to deprive the Plaintiffs of their civil rights, by repeated acts of bad faith in violation of 42 U.S.C. §1981.

69. As a result, Plaintiff suffered mental anguish, emotional distress, loss of employment opportunities, and other monetary damages.

**COUNT II.**
**[Hostile Work Environment in Violation of the Civil Rights Act of 1866, 42 USC §1981 Brought by Plaintiff Against All Defendants]**

70. Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

71. Plaintiff alleges that Defendants engaged in various and severe and hostile actions against them acting individually as a result of their opposition to race discrimination.

72. That the purpose of Defendants and their actions in so seeking was to prevent Plaintiffs through economic and psychological intimidation, from seeking equal protection of the laws, and from enjoying the equal privileges and immunities of citizens under the Constitution and laws of the United States and State of New York.

73. As a result of the aforesaid acts, depriving Plaintiffs of their civil rights, they suffered mental anguish, emotional distress, loss of employment opportunities, and other monetary damages.

**COUNT III.**

**[Race Discrimination in Violation of New York State Executive Law §296 Brought by Plaintiff Against All Defendants]**

74. Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

75. New York State Executive Law §296 et seq., makes it unlawful to discriminate against any individual in the terms, conditions, or privileges of employment on the basis of race. The law also makes it unlawful to create a severe and hostile environment where retaliation and race discrimination are encouraged and/or tolerated.

**COUNT IV.**
**[Violation of New York State Human Rights Law Aiding and Abetting Brought by Plaintiff Against All Defendants]**

76. Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

77. SAN-KIT CHENG a/k/a San Kit Cheng a/k/a Sankit Cheng a/k/a Sam Cheng; MENGXING WANG a/k/a Meng Xing Wang, a/k/a May Wang, a/k/a May Cheng; SONGQIANG WANG a/k/a Song Qiang Wang a/k/a John Wang; and HAIFAN WANG a/k/a Hai Fan Wang a/k/a Fred Wangwere all managers and/or supervisors of the Plaintiffs during all relevant times mentioned herein.

78. SAN-KIT CHENG a/k/a San Kit Cheng a/k/a Sankit Cheng a/k/a Sam Cheng; MENGXING WANG a/k/a Meng Xing Wang, a/k/a May Wang, a/k/a May Cheng; SONGQIANG WANG a/k/a Song Qiang Wang a/k/a John Wang; and HAIFAN WANG a/k/a Hai Fan Wang a/k/a Fred Wang aided and abetted Non-Defendant Corporation RED PANDA ASIAN BISTRO d/b/a Lobster House Seafood Buffet Restaurant in their discriminatory and hostile conduct against Plaintiff.

79. The acts and/or omissions of Defendants were intentional, willful, reckless and discriminatory in nature, and directly motivated by Plaintiff's race and/or in retaliation for Plaintiff's complaints of discrimination.

80. By virtue of Defendants' conduct as alleged herein, Plaintiff has been injured.

**COUNT V.**
**[Race Discrimination in Violation of New York City Human Rights Law § 8-107 Brought by Plaintiff Against All Defendants]**

81. Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

82. New York City Human Rights Law §8-107 et seq., makes it unlawful to discriminate against any individual in the terms, conditions, or privileges of employment on the basis of race. The law also makes it unlawful to create a severe and hostile environment where retaliation and race discrimination are encouraged and/or tolerated.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of himself, and the Collective, and the Class, respectfully request that this Court enter a judgment providing the following relief:

a) A declaratory judgment that the practices complained of herein are unlawful under federal and state antidiscrimination and wage-and-hour law;

b) An injunction against the officers, agents, successors, employees, representatives and any and all persons acting in concert with them of Non-Defendant Corporation RED PANDA ASIAN BISTRO d/b/a Lobster House Seafood Buffet Restaurant as provided by law, from engaging in each of unlawful practices and policies set forth herein;

c) Up to $2,000,000.00 as compensatory damages for front pay and for nonpecuniary losses including emotional pain stemming from racially-discriminatory termination, pursuant to Section 1981a(b)(3)(D) of the United States Code;

d) Back pay and reinstatement as equitable relief, and compensatory damages for front pay and nonpecuniary losses including emotional pain stemming from racially-discriminatory termination, and prejudgment and postjudgment interest, pursuant to Section 297 of the NYSHRL; and

e) Back pay and reinstatement as equitable relief, and compensatory damages for front pay and nonpecuniary losses including emotional pain stemming from racially-discriminatory termination, and prejudgment and postjudgment interest, and reasonable attorney fees and costs pursuant to Section 8-502 of the NYCHRL.

**DEMAND FOR TRIAL BY JURY**

Pursuant to Rule 38(b) and 38(c) of the Federal Rules of Civil Procedures, Plaintiffs demand a trial by jury on all questions of facts.

Dated: Flushing, New York
July 4, 2021

TROY LAW, PLLC
*Attorneys for the Plaintiff*
/s/ John Troy
John Troy (JT 0481)
Aaron Schweitzer (AS6369)
Tiffany Troy (Bar ID 5881735)