```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 05/12/2022
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
:
NIQUAN WALLACE, :
:
Plaintiff, :
:       21-cv-5757 (LJL)
-v- :
:       OPINION AND ORDER
CRAB HOUSE, INC. et al, :
:
Defendants. :
:
------------------------------------------------------------------X

LEWIS J. LIMAN, United States District Judge:

Defendant Crab House, Inc. ("Crab House") along with defendants San-Kit Cheng, Mengxing Wang, Songqiang Wang, and Haifan Wang (collectively, "Individual Defendants," and with Crab House, "Defendants") move, pursuant to Federal Rule of Civil Procedure 12(b)(6), to dismiss the complaint filed against them by plaintiff Niquan Wallace ("Plaintiff" or "Wallace"). Dkt. No. 19.

For the following reasons, the motion to dismiss is granted.

## BACKGROUND

For purposes of this motion only, the Court accepts the well-pleaded allegations of the complaint as true.

Defendant Crab House is the successor in interest to the owner of a restaurant located in Queens, New York known as the Lobster House Seafood Buffet Restaurant ("Lobster House"). Dkt. No. 1 ¶¶ 10, 22.[1] The Individual Defendants are alleged to be owners, operators,

---

[1] At the relevant time, Lobster House was owned by Red Panda Asian Bistro Inc. *Id.* ¶¶ 10, 22. Plaintiff bases his claim for successor liability on the allegations that Crab House had notice of the charge and pending lawsuit prior to acquiring Lobster House; that Lobster House is no longer able to provide relief; and that there is substantial continuity in business operations in that,

supervisors, and/or managers of Lobster House. *Id.* ¶¶ 13–21. All Lobster House employees transferred over to Crab House in or around April 2021 when Lobster House closed. *Id.* ¶ 23.

Wallace was employed at Lobster House from on or about June 2, 2019 until his employment was terminated on or about December 21, 2019 on allegations that he was stealing tips from other servers and illicitly obtaining their payroll information from the restaurant's computer. *Id.* ¶¶ 6, 59. The complaint does not allege the job for which Wallace was initially hired, but it describes Wallace's role in various ways including "runner," *id.* ¶ 28, "waiter," *id.* ¶ 29, and "server," *id.* ¶ 30. The complaint alleges that Wallace held his job and performed his duties with skill, dedication, and dignity. *Id.* ¶ 8.

Wallace, who is an African American man, alleges that he and two employees of Hispanic descent were treated differently from other employees who were white or of Asian descent. *Id.* ¶¶ 7, 35. Instead of being given his own tables to serve, Wallace was assigned to "run" food to the tables of other waiters and to clean those tables, depriving him of the time to wait his own tables and the opportunity to earn tips. *Id.* ¶¶ 27–28. No other waiter was required to run other waiters' food. *Id.* ¶ 29. He also was the only server assigned to take out the garbage. *Id.* ¶ 30. Wallace was also required to sweep and mop the floor of the restaurant every day and to play "bodyguard," running after customers who failed to pay the full amount of their bills. *Id.* ¶¶ 31–32.

Wallace alleges that beginning in July 2019, he was accused of taking tips from tables and stealing money from the "money bills." *Id.* ¶ 39. He alleges he was singled out as uniquely suspicious because he is a Black man and that the Individual Defendants would hover over him

---

despite the change in location, Crab House uses the same and substantially the same supervisory personnel and the same job exists under the same conditions. *Id.* ¶ 26; *see also id.* ¶¶ 22–25.

and bump and jostle him in an effort to intimidate him when he was collecting money from customers. *Id.* ¶¶ 33–34. He was also accused of not being honest and trustworthy enough to ring up the cash register while other individuals who were white or of Asian descent were not subject to the same accusation and unfounded suspicion. *Id.* ¶¶ 35, 43.

In or about October 2019, Defendants created a raffle system for assigning sections of tables in the restaurants to servers. *Id.* ¶ 40. Defendants regularly had Wallace select a section last so that he would always receive the worst section, typically the upstairs section of the restaurant. *Id.* ¶ 41. Defendants would then fill the first floor of the restaurant with customers before seating customers upstairs such that Wallace would spend a significant portion of his shift with few to no customers, further reducing his earnings capacity. *Id.* In addition, after October 2019, Wallace had his hours reduced from five days a week to four days a week and was no longer given Friday shifts. *Id.* ¶ 42.

The complaint alleges that two Hispanic employees were also treated differently from employees who were white or of Asian descent. One Hispanic individual—identified only by his first name, Ruben—was hired to work as a server and was a successful trainee but was deemed not trustworthy and not allowed to use the cash register because he was Spanish. *Id.* ¶¶ 36–37. Instead, Ruben was made to work as a busser making no tips and doing heavy duty work. *Id.* ¶ 38. Ruben became discouraged and quit after three months. *Id.* Defendants also hired Alfonso Gonzalez ("Gonzalez"), who is Spanish, as Wallace's replacement. *Id.* ¶ 44.[2] Instead of working as a server, Gonzalez was required to do busboy duties. *Id.* ¶ 45. Like Wallace, he also

---

[2] The complaint alleges that Gonzalez was hired "as soon as Plaintiff filed the lawsuit." *Id.* ¶ 44. It does not explain how, if Gonzalez was hired only after the complaint was filed, the complaint itself could make reference to that fact. In any event, when Gonzalez was hired is immaterial to the Court's decision.

3

was required to work upstairs as a result of the raffle system and had to wait 2–3 hours helping other "family member servers" until he could have customers sent upstairs to his tables. *Id.* ¶ 47. Like Wallace, Gonzalez was also not permitted to go into the cash register. *Id.* ¶ 43. Gonzalez worked only part-time, and the complaint asserts that ultimately his employment was terminated as a result of his race. *Id.* ¶ 48.

The complaint also alleges that two white employees received preferential treatment. It alleges that a white woman, Kimberly Ann Gomez ("Gomez"), received preferential treatment because of her race. *Id.* ¶ 50. She was considered trustworthy and was permitted to go into the cash register. *Id.* ¶ 51. She also received more days to work and had her sick-day requests readily approved and honored while Wallace was not given such privileges and would lose a full day's work and pay if he arrived at work even a little late. *Id.* ¶¶ 52–53. Gomez's requests for a schedule shift were also readily approved while Wallace's similar requests were denied. *Id.* ¶¶ 54–55. Gomez was also never ordered to sweep, mop, work the sauce bar, or lift a heavy chair. *Id.* ¶ 56. In addition, another employee who was white, Kasey Karisaridis ("Karisaridis"), never had to sweep or mop during her employment and only had to pick up glasses or plates. *Id.* ¶¶ 57–58.

On or about December 21, 2019, Wallace's employment was terminated by defendant San-Kit Cheng who told him: "I am sorry. You are terminated as I was told that you are stealing other servers['] tips and stealing other employees['] payroll information from the computer. I saw the camera and confirmed that." *Id.* ¶ 59. Defendant Haifan Wang had complained to San-Kit Cheng that Wallace had taken a picture of the register. *Id.* ¶ 60. Wallace responded that he had never taken tips from other employees and that he was taking photos of his personal pay stub

4

information on the work computer and not of his co-workers' information.[3] *Id.* ¶ 63. On or about December 23, 2019, Wallace returned to the restaurant to receive his final paycheck. *Id.* ¶ 64.

## PROCEDURAL HISTORY

Plaintiff initiated this case by complaint filed on July 4, 2021. Dkt. No. 1. The complaint contains five counts: Count I is for race discrimination in violation of 42 U.S.C. § 1981, Dkt. No. 1 ¶¶ 65–69; Count II is for a hostile work environment in violation of 42 U.S.C. § 1981, Dkt. No. 1 ¶¶ 70–73; Count III is for race discrimination in violation of New York State Executive Law § 296, Dkt. No. 1 ¶¶ 74–75; Count IV is for aiding and abetting discrimination in violation of the New York State Human Rights Law, *id.* ¶¶ 76–80; and Count V is for race discrimination in violation of New York City Human Rights Law § 8-107, *id.* ¶¶ 81–82. Plaintiff seeks a declaratory judgment, injunctive relief, compensatory damages, backpay, and reinstatement. *Id.* at 13–14. On August 6, 2021, Defendants answered. Dkt. No. 14.

On January 4, 2022, Defendants filed their motion to dismiss for failure to state a claim for relief along with a memorandum of law in support. Dkt. Nos. 19–20. Plaintiff filed his response to the motion to dismiss on January 18, 2022. Dkt. No. 23. No reply memorandum was filed.

## LEGAL STANDARD

To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted, a complaint must include "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft*

---

[3] The complaint notes that, in the last month of Wallace's employment, tips were no longer pooled, and each individual waiter would receive his or her tips from the tables they waited. *Id.* ¶ 62.

*v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 570 (2007)). A complaint must offer more than "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertion[s]" devoid of "further factual enhancement" in order to survive dismissal. *Twombly*, 550 U.S. at 555, 557. The ultimate question is whether "[a] claim has facial plausibility, [i.e.,] the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. Put another way, the plausibility requirement "calls for enough fact to raise a reasonable expectation that discovery will reveal evidence [supporting the claim]." *Twombly*, 550 U.S. at 556; *see also Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 46 (2011).

## DISCUSSION

Defendants argue that Plaintiff has not pleaded sufficient facts to support any of his claims. They argue that Count I must be dismissed because Plaintiff does not allege that he performed his work satisfactorily or that he suffered an adverse employment action under circumstances giving rise to an inference of discrimination. Dkt. No. 20 at 3–4. On Count II, Defendants argue that Plaintiff has not alleged facts to support that he was subject to a hostile work environment, that the environment unreasonably interfered with his work performance, or that the environment was hostile as a result of his race. *Id.* at 5–7. Defendants argue that Plaintiff's state and city claims fail for similar reasons. *Id.* at 7–8. The Court examines Plaintiff's adverse employment discrimination, hostile work environment, and state and city claims in turn.

I.     **Employment Discrimination Under 42 U.S.C. § 1981**

Employment discrimination claims under Section 1981 are subject to the same standards as those under Title VII. *See Bermudez v. City of New York*, 783 F. Supp. 2d 560, 576 (S.D.N.Y. 2011) (collecting cases). In the absence of "direct evidence" that an adverse employment decision was motivated at least in part by the plaintiff's race, the plaintiff can plead a prima facie case of discrimination by alleging facts that would plausibly support "that [1] the plaintiff is a member of a protected class, [2] was qualified, [3] suffered an adverse employment action, and [4] [there is] at least minimal support for the proposition that the employer was motivated by discriminatory intent." *Littlejohn v. City of New York*, 795 F.3d 297, 311 (2d Cir. 2015). At the motion to dismiss stage, a plaintiff "need only give plausible support to a minimal inference of discriminatory motivation." *Id.*; *see also id.* at 310 (noting the relationship between the *McDonnell Douglas* burden-shifting framework and the pleading standard in *Iqbal* and concluding that "[t]o the same extent that the *McDonnell Douglas* [framework] . . . reduces the facts a plaintiff would need to *show* to defeat a motion for summary judgment prior to the defendant's furnishing of a non-discriminatory motivation, that presumption also reduces the facts needed to be *pleaded* under *Iqbal*" (emphasis in original)). "An inference of discrimination can arise from circumstances including, but not limited to, 'the employer's criticism of the plaintiff's performance in ethnically degrading terms; or its invidious comments about others in the employee's protected group; or the more favorable treatment of employees not in the protected group; or the sequence of events leading to the plaintiff's discharge.'" *Id.* at 312 (quoting *Leibowitz v. Cornell Univ.*, 584 F.3d 487, 502 (2d Cir. 2009)).

"Once a plaintiff has established a *prima facie* case, a presumption arises that more likely than not the adverse conduct was based on the consideration of impermissible factors. The burden then shifts to the employer to 'articulate some legitimate, nondiscriminatory reason' for

7

the disparate treatment." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 83 (2d Cir. 2015) (citation omitted) (quoting *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)). "If the employer articulates such a reason for its actions, the burden shifts back to the plaintiff to prove that the employer's reason 'was in fact pretext' for discrimination." *Id.* (quoting *McDonnell Douglas*, 411 U.S. at 804).

Defendants do not dispute that Plaintiff was a member of a protected class and that he suffered the adverse employment action of being terminated.[4]  Dkt. No. 20 at 2–3.  They argue, however, that the pleaded facts do not support either that he performed his duties satisfactorily or that there are facts giving rise to an inference of discrimination on the basis of race.  *Id.* at 2–4.

Plaintiff has sufficiently pleaded that he was qualified for the position.  Courts have described the second element of the prima facie case under the *McDonnell Douglas* framework as requiring a showing that the plaintiff was either "qualified for the position" or "performing his duties satisfactorily."  *Slattery v. Swiss Reinsurance Am. Corp.*, 248 F.3d 87, 91 (2d Cir. 2001). This "mere variation in terminology between 'qualified for the position' and 'performing . . . satisfactorily,'" however, does not change that "all that is required is that the plaintiff establish basic eligibility for the position at issue, and not the greater showing that he satisfies the employer." *Id.* at 91–92.  The Second Circuit has "repeatedly held" that "the qualification

---

[4] Plaintiff argues that he suffered from other adverse employment actions in addition to termination; for example, he contends that the various tasks he was required to do at the restaurant and his assignment to the worst section of the restaurant amount to adverse employment actions. Dkt. No. 23 at 7-8. Defendants have not responded to this contention.  "A plaintiff sustains an adverse employment action if he or she endures a materially adverse change in the terms and conditions of employment." *Vega*, 801 F.3d at 85 (quoting *Galabya v. N.Y.C. Bd. of Educ.*, 202 F.3d 636, 640 (2d Cir. 2000)).  Even if the Court were to assume (without deciding) that the conduct of which Plaintiff complains rises to the level of an adverse employment action, Plaintiff would still fail to state a claim because he does not plead a minimal inference of discrimination. *See infra*.

8

necessary to shift the burden to defendant for an explanation of the adverse job action is minimal; plaintiff must show only that he 'possess the basic skills necessary for performance of [the] job.'" *Id.* at 92 (alteration in original) (quoting *Owens v. N.Y.C. Housing Auth.*, 934 F.2d 405, 409 (2d Cir. 1991)). In addition, "especially where discharge is at issue and the employer has already hired the employee, the inference of minimal qualification is not difficult to draw." *Id.* Here, Plaintiff has alleged that he performed his duties with skill, dedication, and dignity and that he performed a variety of duties at the restaurant, including waiting tables, during the over six months that he worked at the restaurant. Given these facts, Plaintiff has sufficiently pleaded that he possessed the basic skills necessary for the position and raised the inference of minimal qualification.

   The complaint, however, does not plead the minimal inference of discrimination as part of the prima facie case. Plaintiff relies on the allegation that others who were white or of Asian descent received preferential treatment. But he does not allege that those others were similarly situated. "An employee is similarly situated to co-employees if they were (1) subject to the same performance evaluation and discipline standards and (2) engaged in comparable conduct." *Blaise v. Verizon New York Inc.*, 804 F. App'x 68, 70 (2d Cir. 2020) (summary order) (quoting *Ruiz v. County of Rockland*, 609 F.3d 486, 493 (2d Cir. 2010)). "[I]t is insufficient for a plaintiff to make naked assertions of disparate treatment without factual allegations indicating those employees treated differently were similarly situated." *Colon v. City of New York*, 2021 WL 4943552, at *12 (S.D.N.Y. Jan. 15, 2021) (quoting *Sosa v. N.Y.C. Dep't of Educ.*, 368 F. Supp. 3d 489, 514 (E.D.N.Y. 2019)), *report and recommendation adopted*, 2021 WL 4427169 (S.D.N.Y. Sept. 26, 2021).

Plaintiff's barebones pleading does not satisfy this standard.  Plaintiff identifies two employees who he claims received preferential treatment to the treatment he received—Gomez and Karisaridis.  Dkt. No. 1 ¶¶ 49–58.  But Plaintiff does not identify anything about either employee other than that each was white and "worked with" Plaintiff.  *Id.* ¶¶ 49, 57.  In particular, Plaintiff does not plainly allege the job he was hired to perform—whether it was to be a runner or a waiter/server[5]—or the jobs that either of the alleged comparators were hired to perform.  Thus, although the complaint alleges that he was required to run food from the kitchen to the tables that others served and was required to clean the tables and mop the restaurant whereas others had their own tables to wait, the complaint's allegations make it as or more plausible that he had different job responsibilities because he was hired to perform different job responsibilities.  That inference is made all the more plausible by the complaint's allegations that the person who was Plaintiff's replacement was asked to work as a busboy.  It thus seems likely that Plaintiff was asked to bus tables because that is the job for which he was hired and that the others were not asked to bus tables because they—unlike Plaintiff—were not hired for a job that required the busing of tables.

Moreover, to the extent that the complaint could be read to suggest that Plaintiff's termination was discriminatory and was on the basis of his race rather than his conduct, he does not allege that there were any other employees who engaged in comparable conduct whose employment was not terminated.  Count I thus must be dismissed.  *See Moore v. City of New York*, 2017 WL 35450, at *12 (S.D.N.Y. Jan. 3, 2017) ("Beyond merely identifying himself as an

---

[5] Plaintiff's opposition to the motion argues that Defendants hired Plaintiff as a server.  Dkt. No. 23 (citing Dkt. No. 1 ¶ 8).  But this allegation is not included in paragraph 8 of the complaint or anywhere else in the complaint, and "it is axiomatic that the [c]omplaint cannot be amended by the briefs in opposition to a motion to dismiss."  *O'Brien v. Nat'l Prop. Analysts Partners*, 719 F. Supp. 222, 229 (S.D.N.Y. 1989).

African American male and noting that a number of [the] [d]efendants involved in the alleged adverse actions suffered by [the plaintiff] are 'white' and/or 'female,' [the plaintiff] proffers no other facts to support his claim that [the] [d]efendants took action against him because of his membership in a protected class."), *report and recommendation adopted*, 2017 WL 1064714 (S.D.N.Y. Mar. 20, 2017).

## II.     Hostile Work Environment Under 42 U.S.C. § 1981

Count II alleges that Plaintiff was subject to a hostile work environment in violation of 42 U.S.C. § 1981. *See Littlejohn*, 795 F.3d at 320 ("Section 1981 has been interpreted to 'provide a cause of action for race-based employment discrimination based on a hostile work environment.'" (alteration adopted) (quoting *Whidbee v. Garzarelli Food Specialties, Inc.*, 223 F.3d 62, 69 (2d Cir. 2000))). To plead a hostile work environment under federal law, a plaintiff must plead that a defendant's conduct: (1) was objectively severe or pervasive in that it created an environment that a reasonable person would find hostile or abusive; (2) created an environment that the plaintiff subjectively perceived as hostile or abusive; and (3) occurred because of the plaintiff's protected characteristic. *See Patane v. Clark*, 508 F.3d 106, 113 (2d Cir. 2007); *Littlejohn*, 795 F.3d at 320–21; *Sherman v. Fivesky, LLC*, 2020 WL 2136227, at *5 (S.D.N.Y. May 5, 2020). To plead conduct that is pervasive, a plaintiff must allege incidents that are "more than episodic; they must be sufficiently continuous and concerted." *Littlejohn*, 795 F.3d at 32; *see also James v. Borough of Manhattan Cmty. Coll.*, 2021 WL 5567848, at *8 (S.D.N.Y. Nov. 29, 2021). "Isolated incidents usually will not suffice to establish a hostile work environment, although [the Second Circuit has] often noted that even a single episode of harassment can establish a hostile work environment if the incident is sufficiently 'severe.'" *Redd v. New York Div. of Parole*, 678 F.3d 166, 175–76 (2d Cir. 2012). "In determining whether a plaintiff suffered a hostile work environment, [courts] must consider the totality of the

11

circumstances, including 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Littlejohn*, 795 F.3d at 321 (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993)). Conduct that is offensive but that is directed at and affects members of protected classes and others equally is not actionable. *See Menaker v. Hofstra Univ.*, 935 F.3d 20, 38 n.88 (2d Cir. 2019) ("Put bluntly, the equal opportunity harasser escapes the purview of Title VII liability." (quoting *Brown v. Henderson*, 115 F. Supp. 2d 445, 450 (S.D.N.Y. 2000))).

Plaintiff does not allege facts sufficient to state a claim for a hostile work environment. He alleges that he was forced to run food to the table of other waiters, to clean tables, to take out the garbage, to sweep and mop the floor, and to play "bodyguard." But that he was required to do these tasks does not amount to conduct by Defendants that a reasonable person would find hostile or abusive; the functions Plaintiff was asked to perform are functions that are typically performed in a restaurant. Plaintiff also alleges that one of the defendants frequently accused him of stealing money and that he received undesirable table assignments. But he does not plead facts to suggest that this conduct occurred because of his race. There are, for example, no allegations of racial slurs or comments directed at him and, as noted, there also are no allegations that similarly situated individuals were treated differently. In the absence of any allegations that would satisfy the three prongs of a hostile work environment claim, Count II must be dismissed.

### III.     New York State and New York City Claims

Because the federal claims are dismissed, the Court declines to exercise supplemental jurisdiction over Plaintiff's remaining claims under state and local law. *See* 28 U.S.C. § 1367(c)(3); *Klein & Co. Futures v. Bd. of Trade of City of N.Y.*, 464 F.3d 255, 262 (2d Cir. 2006) ("It is well settled that where . . . the federal claims are eliminated in the early stages of

litigation, courts should generally decline to exercise pendent jurisdiction over remaining state law claims." (collecting cases)).

## CONCLUSION

The motion to dismiss is GRANTED. Plaintiff has not had an opportunity to replead, and discovery has been ongoing. Accordingly, the dismissal is without prejudice to the filing of an amended complaint within thirty (30) days of the date of this Order. If no amended complaint is filed, the case will be closed. The joint pretrial order deadline, final pretrial conference, and trial date are ADJOURNED sine die.

The Clerk of Court is respectfully directed to close Dkt. No. 19.

SO ORDERED.

Dated: May 12, 2022
  New York, New York

LEWIS J. LIMAN
United States District Judge